[PHILADELPHIA, MAY 8TH, 1839.]

## COMLY *against* M'BRIDE.

### IN ERROR.

A receipt for the price of goods, given by an agent of a consignee, is a receipt by his employer, so as to enable the consignor to maintain an action for money had and received against the consignee.

ERROR to the District Court for the City and County of Philadelphia.

This was an action of assumpsit, brought by Patrick M'Bride, who was a manufacturer of domestic goods, against Samuel Comly, to whom, as he alleged, he had consigned certain cases of such goods for sale.

The first and second counts of the declaration were for selling under the invoice price, against the defendant's promise and undertaking. The third was for negligence in the sale, and selling for less than could have been got, with ordinary and reasonable care, by five hundred dollars. The fourth was for not rendering a reasonable account of the sale, and for not paying over the proceeds to the plaintiff. This count alleged a sale of the goods by the defendant, but contained no averment of his receipts of the proceeds. The fifth and remaining counts were for goods sold and delivered, money had and received, and an account stated.

It appeared on the trial that the goods were consigned to Comly in Philadelphia, to be sent to one Thompson, a commission merchant at New Orleans, who it appeared was in the habit of selling goods for other persons as well as for Comly, who was his agent here, to send him goods and procure him consignments. Testimony was adduced that instructions were given by M'Bride in Comly's counting house some time before sending the goods or invoice, to send them to New Orleans. M'Bride had called and made an arrangement for that purpose.

It was testified by a clerk in the defendant's employ at the time of the transaction, that in cases like this the original invoice would

(Comly v. M'Bride.)

be retained, and that in this case it was retained by the defendant, but that he did not know where it then was.

Another witness in the defendant's employment proved that he had been directed by the defendant to make out an account current between the parties. That he copied it from the original account-sales of Thompson. That he was directed by the defendant to ascertain the interest on the sales; and to add the interest and commission to M'Bride's account, amounting altogether to about twenty-seven hundred dollars. M'Bride complaining that his goods were sold too low, the witness was told by Comly to make some deduction in consequence. That there was an effort to compromise after M'Bride's complaint; and the witness was requested to make out an account by which the parties were to settle the matter in dispute. He was told to take off all the charges in New Orleans, and all in Philadelphia. It was a settlement of M'Bride's account in the book—account of sales of his goods sold under the limits, but that he understood that M'Bride fled from the proposal. Another witness who was requested by the plaintiff to call on Comly about his sales, said that he never heard him disclaim responsibility as principal in this transaction, and that he did not pretend that he was settling with M'Bride as agent for the Thompsons. That the witness had himself sent goods to New Orleans through the defendant, who had never attempted to shift the responsibility from himself to Thompson; nor pretended that he was settling with him as the agent of Thompson. Testimony was also given, that in the Spring of 1835 goods advanced in price.

On the part of the defendant it was proved by various witnesses in New Orleans, that the goods were sold for their full market value at the time.

The defendant also gave the evidence of a coloured man in his employ, and whose business it was to examine all the invoices consigned to him in this city and suburbs, and to mark them if correct, that these goods never came into Comly's store, but went directly to the wharf. This witness swore that he came out of the store to obtain the invoice, and followed the drays, which went down to the wharf; that on the wharf M'Bride came up to the witness and said he had a lot of goods; and on being asked for the invoice, he said, they are not for you, I am going to ship them to New Orleans. The witness then left him and came up to the store: it was one of Mr. Comly's vessels; M'Bride did not give him the invoice; witness had no recollection of dates; and said that he had never mentioned those facts to his employer, or any one else.

It was also proved that Thompson suspended payment in April, 1837: that Comly was a very heavy creditor of Samuel Thompson's, about $500,000: in February, 1836, it was upwards of

$400,000, and it appeared to have been so for a considerable time: that Thompson did not remit specially to pay these sales; but did remit large sums from time to time.

The original invoice furnished by the plaintiff to the defendant was not in evidence.

The account-sales of Thompson, dated the 30th of November, 1835, and 6th of January, 1836, were headed " Sales account Patrick M'Bride, by order of Samuel Comly."

The invoice of the eleven cases of domestics purported to be consigned to Mr. Samuel Thompson, for sale, on account of Patrick M'Bride.

The learned judge in his charge to the jury said,—That it was a question of fact for their decision, whether, as the plaintiff contended, the goods were consigned directly to the defendant so as to make him responsible, or, as the defendant alleged, they were consigned to Mr. Samuel Thompson, at New Orleans, so that the defendant was a mere forwarding agent, and not answerable for the sales. That if the jury were of opinion with the plaintiff, on the question just stated, the plaintiff could recover upon the declaration filed in this action. In commenting upon the evidence, the judge noticed the fact that in the account-sales made out by Mr. Thompson and produced by the defendant, commission and guaranty were charged by Samuel Thompson, and the net proceeds of sales placed to the credit of Samuel Comly; that if, on the facts, Mr. Comly was liable to the plaintiff, he might, so far as the plaintiff was concerned, be regarded by the jury as having had and received to the use of the plaintiff, the net proceeds thus passed to his credit—no matter what the actual state of the general account between him and Mr. Thompson was. As there was a count in the declaration for money had and received, the judge thought, without looking to the other counts (though the plaintiff was entitled to have them considered if necessary,) that if the jury found for the plaintiff on the merits, the action could be maintained.

To this charge exception was taken by the defendant: and the verdict being for the· plaintiff, this writ of error was brought and error was assigned as follows:

" 1. The Court erred in charging the jury, that the sales of the goods having been made by Samuel Thompson, and the proceeds of the same passed to the credit of Comly by Thompson, might be considered by the jury as so much money had been received by the defendant to the use of the plaintiff—although there was no evidence to show that the defendant had ever received any money or remittance from Thompson for or on account of said sales.

(Comly v. M'Bride.),

2. The judge erred in this, that he declined to charge the jury, that the action was not sustained by the evidence as he was requested to do, but on the contrary charged that the same was good, and that the plaintiff might recover upon it.

Mr. *M'Call*, for the plaintiff in error.

The only question is, will money had and received lie where the defendant has not actually received money, but only a credit for money from an insolvent person? This is the only point to be decided; for the judgment being entered generally on all the counts, cannot be sustained if the count for money had and received be bad. That the money was ever actually received by Comly is not pretended; nor can it be maintained that an equivalent for it has been received, unless it can be shown that a mere book credit from a man who, at the time of the credit was deeply indebted to him and ever since so continued, is equivalent to a receipt of money. During the period embracing these sales, Comly was a creditor of Thompson of upwards of five hundred thousand dollars.—[KENNEDY, J. Is not the receipt of the agent the receipt of the principal?] Not for the purpose of maintaining this form of action. The money must actually be received to sustain this action, not by any intendment of the law. Perhaps there may be a solitary exception in the case of negotiable paper. It is a question of remedy. There is a class of cases in which an agent or middle-man who has received a credit from his sub-agent has been held responsible to the principal in this form of action. But that is where another element is combined, namely the destruction of the principal's remedy against the sub-agent by the acts, negligence or omissions of the middle-man; in other words, where he has made the debt his own. Such was *Andrew* v. *Robinson*, (3 *Campb.* 198,) and *Wilkinson* v. *Clay*, (6 *Taunt.* 110.) But these cases have no analogy to this. Comly has not tied up the plaintiff's hands as to Thompson, nor destroyed any security or impaired any obligation of Thompson to him. [GIBSON, C. J. Could M'Bride recover against Thompson—Is there any privity between them?] I submit that he clearly has a right to look to Thompson, who was his agent in New Orleans as Comly was here. He then commented on the facts to show that such privity existed between M'Bride and Thompson.

Mr. *Haly*, for the defendant in error.

There was evidence that the vendor of the consigned property in New Orleans, was the defendant's agent, and that the defendant never disclaimed his liability as principal, for the proceeds of sale: further that the amount was passed to the defendant's credit in the account sales furnished to him by his sub-agent, and that large amounts were, in fact, remitted to the defendant, though not specially on this account. The jury have found against the defendant as principal, upon the whole evidence, and, however the objections now

(Comly *v.* M'Bride.)

raised might have constituted grounds for an application for a new trial below, they are unavailable here after verdict. The jury having found the fact of a receipt of the plaintiff's moneys by the defendant's agent, the defendant himself is bound thereby and the count for money had and received is applicable, and all sufficient for the plaintiff's purposes. He never recognised Thompson as his agent; is content with the finding of the jury against the defendant; and therefore declines (as he always has) the profered remedy against the sub-agent, who was notoriously insolvent before he went to New Orleans.

Mr. *Brashears* in reply.

PER CURIAM:—A remittance of the proceeds of sales by an agent is not necessary to maintain an action against the principal. It is true that an action for money had and received cannot be sustained unless money has been actually received; but if the actual vendor were the defendant's agent, of which there was evidence to go to the jury, his receipt of the price was the defendant's receipt of it. Finally there was a count in the declaration on which the plaintiff might recover.

Judgment affirmed.