## Rung *against* Shoneberger.

2w 23
175 282

Watts.
2w 23
194 324

Watts.
2w 23
f197 17

Watts.
2w 23
201 158

2 W    23
e 28 SC 1646

2 W    23
215    456

The erection of a building upon the public square of a town is a public and not a private offence, and may be abated by any one aggrieved.

If a grant .be made to the inhabitants of a town, of a public square, without defining its location, the inhabitants may elect a location for it; but such election must be made within a reasonable time.

Adverse possession is not to be made out by inference, but by clear and positive proof; and every presumption is in favour of possession in subordination to the title of the true owner.

WRIT of error to *Huntingdon* county.

This was an action of trespass by Dr Peter Shoneberger against Henry Rung and others, for prostrating and removing a stable and shed in the town of Petersburg. The defendants, or some of them, were officers of the corporation, and removed the buildings of the plaintiff, by authority of a resolution of the town council; and the question, therefore, turned upon the right of the defendants to remove them. In 1795, Peter Shoneberger, the uncle of the defendant in error, laid out the town of Petersburg. A plan was duly recorded, on which is written, " public square, one hundred and six feet by one hundred and fifty-six feet." It did not appear in evidence that this square had ever been precisely located, by certain, defined metes and bounds, on the ground. The defendants alleged that the buildings were upon the public ground, and therefore justified themselves in removing them. The proof was that the buildings had been erected thirty-five years; but evidence was given by the defendants that the plaintiff had acknowledged they were on the square, and at one time had made a contract for their removal, assigning as a reason that fact.

The court below was of opinion that the plaintiff's long possession established his right, whether the buildings had been on public ground originally or not, and therefore he was entitled to recover. This opinion was assigned for error.

*Bell,* for plaintiff in error, cited 1 *Co. Lit.* 13; 2 *Black. Com.* 339; 15 *Serg. & Rawle* 136; 3 *Serg. & Rawle* 294; 6 *Serg. & Rawle* 23; *Adams on Eject.* 46, 65; 9 *Wheat.* 172; 1 *Johns. Rep.* 158; 12 *Johns. Rep.* 367; 3 *Johns. Cas.* 124; 9 *Johns. Rep.* 163; 1 *Hawk.* 694.

*Miles* and *Potter,* contra, cited, *Co. Lit.* 56, *a*; 2 *Harris & M'Hen.* 138; 10 *Mass.* 70; 2 *Mass.* 492; 1 *Wash. Rep.* 34.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of trespass *quare clausum fregit,*

brought by the plaintiff, Shoneberger, against Rung and others, for pulling down a stable and shed, in the borough of Petersburg.

The defendants justify the alleged trespass, on the ground that the building was a common, a public nuisance having been erected on the public square.

The facts were these. In 1795, Peter Shoneberger, the uncle of the plaintiff, laid out the town of Petersburg. A plan of the town was duly recorded. On the plan, is stated, "public square, one hundred and six feet by one hundred and fifty-six feet." It seems to be a conceded point, that the square was to be of the size and dimensions marked on the plan. It, however, happens, either that the square was never precisely located, by certain, defined metes and bounds, on the ground; or if it were, direct evidence of the fact of location has been lost.

The defendants rest their cause on two grounds.

1. That the buildings were erected on the public square; and this they endeavour to show, as they have a right to do, by the repeated declarations of the plaintiff.

And, 2. They contend, that admitting the square was not located by the proprietor, but, either from accident or design, its precise limits have been left uncertain; the owners and *occupiers* of the lots in the first instance, or the corporation afterwards, have a right to locate it on such unappropriated ground as will be most beneficial to the inhabitants and the public.

It is most convenient, in the first place, to dispose of the second ground of defence.

It is true that a deed is to be construed most strongly against the grantor; and if it can enure in different ways, the grantee may take it in such way as shall be most to his advantage; he has his election in which way to take it. If the deed be not expressed with certainty, the grantee shall have the benefit of the defect. Jackson *v.* Hudson, 3 *Johns. Rep.* 387; Jackson *v.* Blodget, 16 *Johns. Rep.* 173.

Granting the application of these principles, yet, if the borough or the inhabitants wish the benefit of them, they must avail themselves of the right of election in a reasonable time; otherwise this inconvenience and injustice would result, that the *proprietor* would be prevented for an indefinite length of time from making any improvements on the property whatever. Until they call into exercise their right, the erection can, in no point of view, be considered as a nuisance. For how could the plaintiff know that they would determine the election so as to include this building. And here, it must be remarked, that the resolution of the town council is not an election, but the assertion of an old right, on the supposition of a previous appropriation. But would it be reasonable to permit them now to elect, after a period of upwards of thirty years, by such a designation as to prostrate houses already erected? The most that can, in justice, be required, will be, to allow them to select for that purpose

[Rung v. Shoneberger.]

such parts of the town as are unappropriated to the use of the proprietor, or others. If they insist upon laying the square upon other than vacant ground, it must be by some other mode than the will of one of the parties to the contract, and what that may be, it is not now necessary to determine.

The defendant further complains of the charge on the act of limitations.

The lapse of time, say the court, gave title to the plaintiff. If so, there remains nothing for the jury to do, but to assess the damages. Although, in one part of the charge, the court would seem to refer the facts to the jury, immediately after, they instruct them that the length of time the plaintiff had possession of the property, gave title, and that he had a right of action. The building was erected, and in the possession of the plaintiff, for a time more than is required to give title, as against private rights, provided the possession was adverse. The case, therefore, involves two points. Is the erection of a building, in a public square of a borough, town or city, a public and common nuisance? 2. If it is not, then was the possession of the plaintiff proved by the witnesses to be an adverse possession?

As nuisances are but of two kinds, common or public nuisances, and private nuisances, this is a case, either of one or the other description. If of the latter, each of the lot holders, before the act of incorporation, had a right of action, for a violation of their individual interests; if of the former, the remedy must be referred to the class of public wrongs, or crimes and misdemeanours. Since the foundation of the province, there has been no case where an *individual* has sought a remedy by *action* for such a wrong; and this is an argument of no inconsiderable force against the assertion of such a right. But there are cases where an *indictment* has been sustained, as in a case tried in the circuit court of Bradford county, where Guy Tozer was, after a full hearing of some of the most distinguished counsel in that section of the state, indicted and convicted for the offence of erecting a house on the public square in the village of Athens. It is admitted, that the erection of a building on a street (Comor *v.* M'Donald, 16 *Serg. & Rawle* 394) is a public nuisance; but a distinction has been attempted between a street and a square. In this state there are few ancient towns in which squares, such as this, do not form part of the plan. They are generally located at the intersection of the streets; and are intended as sites for the erection of buildings for the use of the public; such as court houses, market houses, school houses and churches; sometimes they are designed for ornaments; and at others, they are intended for the promotion of the health of the inhabitants by admitting a free circulation of air. The squares, as well as the streets, and for the same reason, are placed under the superintendence of the local authorities, who have full power to regulate them, so as more effectually to answer the purposes to which they have been dedicated. Public squares, unlike commons, are not intended for the exclusive use of the citizens of the city or borough

II.—D

[Rung v. Shoneberger.]

where they are situated ; but are also designed for the comfort and convenience of strangers, in the pursuit either of business or pleasure. It would be an abuse of the grant, to attempt to appropriate the enjoyment of them to citizens, in exclusion of others. For this reason I cannot trace any resemblance in this to a right of common, where each commoner has an interest, and of course a right of action for his individual injury. The learned judge who ruled this cause expressed an opinion, that if a person was suffered to build a house on one of the beautiful squares in the city of Philadelphia, and was permitted to remain there twenty-one years, his title would be good. But this depends on the question, whether the building was a public or private nuisance. The case put as an illustration by the court we will determine when it arises ; but I must be permitted to observe, that I have but little faith in the correctness of the opinion. For although the city has a qualified property in the ground, yet the corporation is but a trustee of the public, for whose use and benefit the squares were left open. The enjoyment of them is free, as things of common right, to all the citizens of the commonwealth ; subject, however, as I before observed, to such regulations and restrictions affecting all, as are not inconsistent with the grant. And in this respect I am at a loss to see any difference between a street and a square. If the erection of a building in a square is a common nuisance, the plaintiff can acquire no right by long continued possession. Public rights, say the court in the case of Comor *v.* M'Donald, 16 *Serg. & Rawle* 394, cannot be destroyed by long continued encroachments, unless the possession has continued so long, that the party may put his title on the ground of prescription. However twenty-one years acquiescence may bind parties whose private rights only are affected, yet the public have an interest in the suppression of public nuisances, though of longer standing.

In a river therefore, which is a public highway, twenty years enjoyment of the water is not conclusive as to the right. And if a river ever has been a public highway, even if it should not be used as such for the period of twenty years, and during that time has been in a condition inconsistent with its use as a public highway, the public right is not extinguished, if it existed previously to that time. *Angel on Water Courses* 49.

Public nuisances are indictable *only*, and are not actionable. The reason of the rule is (and its application is as strong in the case of a square as a street), that where rights of a public nature, and common to all the people, are affected, no one person is able to assign his particular proportion of the injury, and even if he is, the law deems it too great a hardship for the offender to be harassed with separate actions. The plaintiff would have esteemed it an intolerable grievance, if each inhabitant of the town of Petersburg had brought a separate action against him. And this is a strong argument to show, that such a nuisance must be adjudged a public, and not a private offence. But a nuisance, whether public or private, may be

[Rung v. Shoneberger.]

abated by the party aggrieved, so that it is done peaceably, and without a riot.　The reason (says Blackstone, 3 *Bl. Com.* 5) why the. law allows this private and summary method of doing justice is, because injuries which obstruct or arrest such things as are of daily convenience and use, require an immediate remedy, and cannot wait for the slow. progress of the ordinary forms of justice.

I propose now to examine the charge on the point of possession.

To give title by possession, the title must be adverse ; and whether it is adverse, is a question exclusively for the jury : and in Jenks *v.* Jay, 9 *Johns. Rep.* 102, the judge having directed as to that fact, a new trial was granted.　In Pennsylvania the rule is, that when there are a given state of facts, which are admitted or distinctly proved, whether the possession is adverse or not, is a question of law ; but in a doubtful case, the truth of the facts must be submitted to the jury. And here, although the plaintiff proved that he had been in possession upwards of twenty-one years, yet the defendants gave evidence, that he had frequently, during·the continuance of his possession, recognised the title of the defendants.　It was a proof that he admitted the existence of a public square ; and that he confessed, on more than one occasion, that the stable and shed were erected upon it.　The defendants also gave in evidence, an agreement between the plaintiff and James Leonard for the sale of a tavern stand, to which the property in dispute was appurtenant; in which the parties stipulated for the removal of the stable and shed.　That the plaintiff afterwards threatened compulsory measures against Leonard, for not complying with his contract in that particular ; alleging, as a reason for their speedy removal, that they were erected on the public square ; and that they were an injury and a nuisance to the. spring, of which the inhabitants justly complained.　On these facts, the court instructed the jury, that the possession of Shoneberger was adverse; and in this there was manifest error.　Adverse possession is not to be made out by inference, but by clear and positive proof ; and every presumption is in favour of possession, in subordination to the title of the true owner.　Jackson *v.* Sharp, 9 *Johns. Rep.* 167.　If a person enters into possession of land, and holds it, without more, the presumption is, he claims title.　A possession of more than twenty-one years, under such circumstances, would be adverse ; and as such, would give title.　But if, when he enters, or afterwards, he does not claim title himself, but acknowledges the title of another, his possession must be taken as an entry or holding in subordination to the title of the persons whose right he acknowledges.　And this qualification of the rule is necessary, to protect rights which might otherwise be lost, by the fraud and artifice of the person in the actual possession. A declaration that the right was in another, might be intended, and would frequently have the effect of putting the legal owner off his guard.　Such a declaration is inconsistent with an adverse or hostile holding.　To constitute an adverse possession in New York, it is not necessary there should be a rightful title ; it must however be

[Rung v. Shoneberger.]

a possession under claim or colour of title, and exclusive of any other right. 9 *Johns. Rep.* 180; 13 *Johns. Rep.* 118. But in this state, it is not necessary that there should be an express claim of title; or that there should be colour of title; but when a person disclaims title in himself, or does not claim title, but asserts the right to be in another, it is not such an adverse possession as will give title under the act of limitations.

The points, then, in this cause, may be narrowed down to a question of fact. For if the jury believe, from the testimony, that these buildings were erected on the public square, although their limits and extent have not been precisely defined, they are a public nuisance; and a nuisance, whether public or private, as has been already stated, may be abated by the party aggrieved, so as it is done peaceably and without any riot. It is admitted, that they were removed peaceably, by the defendants, as officers of the borough, duly appointed and empowered under a resolution of the corporation: and if the jury believe they were on public ground, the plaintiff is not entitled to recover.

Judgment reversed, and a *venire de novo* awarded.